UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

_____
:
DANIEL POCHOPIN,                    :
                                    :
        Plaintiff,                  :    Civil Action No. 16-1563-BRM-TJB
                                    :
        v.                          :
                                    :    OPINION
JOHNSON CONTROLS, INC., and         :
JOHN DOES A-Z,                      :
                                    :
        Defendants.                 :
_____:

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Johnson Controls, Inc.'s ("JCI") Motion for Summary Judgment (ECF No. 23). Plaintiff Daniel Pochopin ("Pochopin") opposes the Motion. (ECF No. 27.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. For the reasons set forth below, JCI's Motion for Summary Judgment is **GRANTED**.

**I.    BACKGROUND**

At all times relevant, JCI provided building maintenance services to clients nationwide through its Global Workplace Solutions ("GWS") division. (JCI's Statement of Facts (ECF No. 23-2) ¶ 1 and Pochopin's Resp. to Statement of Facts (ECF No. 27-1) ¶ 1.) JCI provided such services to Johnson & Johnson, Inc. ("J&J") at its J&J Raritan, New Jersey facility until October 2015. (ECF No. 23-2 ¶ 2 and ECF No. 27-1 ¶ 2.) JCI employed various workers at the J&J Raritan facility, including pipefitters, mechanics, heating/ventilation air conditioning ("HVAC") technicians, and electricians. (ECF No. 23-2 ¶ 4 and ECF No. 27-1 ¶ 4.)

On June 2010, Pochopin was hired by JCI as an electrician in the J&J Raritan facility. (ECF No. 23-2 ¶ 5 and ECF No. 27-1 ¶ 5.) His employment was governed by a collective

1

bargaining agreement between JCI and Local 68, Operating Engineers (the "CBA"). (ECF No. 23-2 ¶ 6 and ECF No. 27-1 ¶ 6.) Pochopin's duties consisted of maintenance of electrical systems and electrical repairs. (ECF No. 23-2 ¶ 7 and ECF No. 27-1 ¶ 7.) Pochopin was also the founder and Chairperson of the Raritan Safety Committee. (ECF No. 23-2 ¶ 8 and ECF No. 27-1 ¶ 8.) The Safety Committee conducted monthly meetings, where minutes were typed and reviewed by management. (ECF No. 23-2 ¶ 9 and ECF No. 27-1 ¶ 9.) Pochopin's safety concerns were recorded in those minutes. (ECF No. 23-2 ¶ 10 and ECF No. 27-1 ¶ 10.)

On March 13, 2014, Pochopin sent an email to JCI employees describing a vendor as "unsafe," and stated that vendor would "cut every corner possible to get the job done easier." (ECF No. 23-2 ¶ 11 and ECF No. 27-1 ¶ 11.) The vendor found out about the email and Pochopin received a warning, Frank Lake, a JCI supervisor, for the tone of his remarks in the email. (ECF No. 23-2 ¶ 12 and ECF No. 27-1 ¶ 12.) Pochopin later apologized to those offended by his email and stated he "meant no disrespect to anyone from JCI." (ECF No. 23-2 ¶ 13 and ECF No. 27-1 ¶ 13.)

Sometime in 2013-2014, JCI launched a nationwide Reduction in Force ("RIF") called Project Mozart to promote efficiency in the workplace. (ECF No. 23-2 ¶ 14.) Over 800 employees were laid off nationwide. (*Id.*) Pochopin alleges he was the only employee laid off at the Raritan facility due to Project Mozart. (ECF No. 27-1 ¶ 14.) He contends all other employees that left during that time period either relocated within the company, voluntarily left, or were terminated for other reasons. (*Id.*) JCI alleges it laid off one of four HVAC employees, one of four pipefitter positions, and one of four electricians, including Pochopin, as part of its RIF. (ECF No. 23-2 ¶¶ 15-16.)

Richard Babikian, Area Manager, reviewed the amount of hours worked in each trade prior to deciding how many positions were to be eliminated. (ECF No. 23-2 ¶ 17.) During his review, Babikian learned that electricians, mechanics, and HVAC employees each had approximately a 2500 hour workload for preventive maintenance ("PM"). (*Id.*) "While the mechanics and HVAC crafts used 3 employees to perform the 2500 hour PM work, electrical used 4 employees." (*Id.* ¶ 18.) In addition, each electrician worked approximately 2000 hours per year. (*Id.*) As such, "[t]he total number of hours for 3 electricians is 6000, and with a 'craft utilization' of approximately 80%, that would leave 4800 available hours." (*Id.* ¶ 19.) Because "PM is 2500 hours, that would leave 2300 hours for any electrical repairs." (*Id.* ¶ 20.) Therefore, Babikian made the decision to reduce the electrician head count to three employees. (*Id.*)

JCI contends that in determining which electrician was going to be laid off, as well as other positions in the Project Mozart RIF, it ranked the electricians under four categories, Best Performance, Teamwork and Leadership, and Possession of Unique or Special Skills, with "1" being the best rating and "4" the worst. (*Id.* ¶ 22 and ECF No. 23-10 at 7.) Seniority was used in the case of a tie, and the tied employee with the shortest length of service should be selected. (ECF No. 23-2 ¶ 23 and ECF No. 23-10 at 7.)[1] Pochopin was ultimately ranked last. (ECF No. 23-10 at 7.) In addition to the ranking system, Babikian reviewed each electrician's "craft utilization" score, which measures the percentage of total mechanic time that is attributable to productive work orders. (ECF No. 23-10 at 13.) This was measured by obtaining the mechanics total charged time

---

[1] Pochopin alleges JCI never conducted annual, semi-annual, quarterly, or monthly performance evaluations. (ECF No. 27-1 ¶ 22.) He further contends JCI only created this RIF and ranking system to terminate him, stating, "This entire ranking process was a pretextual ruse to provide cover to [JCI] for my termination in retaliation due to my vigorous advocacy for compliance with safety procedures and regulations. (*Id.*)

3

from their time card data and then pulling their hours charged to productive work orders to determine their craft utilization. (ECF No. 23-2 ¶ 27 and ECF No. 23-10 at 13.) Again, Pochopin had the lowest craft utilization score, demonstrating he was "the least productive of the 4 electricians." (ECF No. 23-10 at 13.) Accordingly, on January 15, 2015, Pochopin was laid off. (ECF No. 23-2 ¶ 44 and ECF No. 27-1 ¶ 44.)

Because Pochopin was a union member, his layoff was reviewed by the Labor Relations Director to assure the CBA was followed. (Decl. of George Mullane (ECF No. 23-11) ¶ 3.) After reviewing the ranking analysis and speaking with Babikian and Gary Prignano ("Prignano"),[2] the Labor Relations Director concurred with the decision to layoff Pochopin. (*Id.* ¶ 7.) Furthermore, at the time of his layoff, JCI offered Pochopin another electrician position, at the same pay, in King Prussia, Pennsylvania. (ECF No. 23-2 ¶ 45 and ECF No. 27-1 ¶ 45.) However, Pochopin did not pursue the opportunity due to distance. (ECF No. 23-2 ¶ 45 and ECF No. 27-1 ¶¶ 45-46.)

In January 2015, Pochopin, through the Union, filed a grievance under the CBA alleging his layoff violated the terms of his CBA. (ECF No. 23-11 ¶ 8.) In March 2015, the Union requested arbitration of the grievance, but Pochopin later withdrew it. (*Id.*) Pochopin said he withdrew the grievance because it was a "gamble" and he "didn't have too much faith" in the Union. (ECF No. 23-2 ¶ 53 and ECF No. 27-1 ¶ 53.)

In June 2015, another electrician voluntarily left, leaving two electricians. (ECF No. 23-2 ¶ 49 and ECF No. 27-1 ¶ 49.) Josh Settele, a transfer from another site, filled the newly opened position. (ECF No. 23-2 ¶ 51 and ECF No. 27-1 ¶ 51.) Pochopin was not offered the position, but he already had another permanent position though the Union at Sanofi. (ECF No. 30-1 ¶ 51.)

---

[2] At all times relevant, Prignano was an Operation Manager. (ECF No. 23-12.)

On January 8, 2016, Pochopin filed this action in the Superior Court of New Jersey, Monmouth County, alleging JCI violated the Conscientious Employee Protection Act ("CEPA") and breached the CBA. (ECF No. 1-1.) The matter was removed to this Court on March 21, 2016. (ECF No. 1.) On August 25, 2017, JCI filed a Motion for Summary Judgment. (ECF No. 23.) Pochopin opposes the Motion. (ECF No. 27.)

## II. LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). "Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir.

1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

**III. DECISION**

**A. CEPA Claim**

JCI argues Pochopin cannot sustain a claim under CEPA because he cannot prove a causal connection between the adverse employment action alleged and his alleged whistle-blowing activity. (ECF No. 23-1 at 7.) JCI argues Pochopin was terminated in conjunction with a nationwide RIF, not for whistle-blowing. (*Id.*) Pochopin contends JCI's justification for terminating him is pretextual. Instead, he argues he was terminated because: (1) he was the most vocal activist on the issue of workplace safety at the Raritan facility; (2) he was the only employee at the Raritan facility who put upper management on notice through counsel of various safety policies and procedures that were violated; and (3) he was "coincidentally" the only employee at the Raritan facility laid off due to the RIF. (ECF No. 27 at 5.)

CEPA was enacted "to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employees from engaging" in such activity. *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994). CEPA provides, in relevant part, that:

> [a]n employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes:
>
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . .
>
> (2) is fraudulent or criminal . . . or

7

>     . . . .
>
>     c. Objects to or refuses to participate in any activity, policy or practice which the employee reasonably believes:
>     (1) is in violation of a law, or a rule or regulation promulgated pursuant to law [;] . . .
>
>     (2) is fraudulent or criminal; or
>
>     (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

N.J. Stat. Ann. § 34:19–3.

To succeed on a CEPA claim, a plaintiff must prove four elements: (1) that the plaintiff reasonably believed the employer's conduct violated a law or regulation; (2) that the plaintiff performed "whistle-blowing activity" as defined in CEPA; (3) that an adverse employment action has been taken against him; and (4) that the whistle-blowing activity caused such adverse employment action. *See Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999); *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003). CEPA covers employee complaints about activities the employee reasonably believes are: (i) in violation of a specific statute or regulation; (ii) fraudulent or criminal; or (iii) incompatible with policies concerning public health, safety or welfare or the protection of the environment. *See Estate of Roach v. TRW, Inc.*, 754 A.2d 544, 550 (N.J. 2000). However, "CEPA does not require that the activity complained of . . . be an actual violation of a law or regulation, only that the employee 'reasonably believes' that to be the case." *Id.* at 552.

Once a plaintiff has established a prima facie case under CEPA, courts employ the burden-shifting analysis that is used in federal discrimination cases involving "pretext" claims. *Blackburn v. United Parcel Servs., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999). Under this test, "the burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason' for its

actions." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 n.2 (3d Cir. 1997) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Once the defendant articulates a legitimate reason for the adverse employment action, the burden shifts back to the plaintiff. *See id.* Then, "the plaintiff must convince the factfinder 'both that the reason [given by the employer] was false, and that [retaliation] was the real reason.'" *Id.* (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)). For summary judgment purposes, the Court must determine whether the plaintiff has presented sufficient evidence for a reasonable jury to find that the employer's proffered reason for the termination was pretextual and that retaliation for the whistleblowing was the real reason for the termination. *See Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995) ("[T]o defeat a summary judgment motion based on a defendant's proffer of a nondiscriminatory reason, a plaintiff who has made a prima facie showing of discrimination need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence."). A plaintiff can point to "inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." *Id.* at 731.

To satisfy the element of causation, a plaintiff must demonstrate that "a causal connection exists between the whistle-blowing activity and the adverse employment action." *Dzwonar*, 828 A.2d at 900. A plaintiff must show that the "retaliatory discrimination was more likely than not a determinative factor in the decision." *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001) (citations omitted). In analyzing the causal link between a protected activity and adverse employment action, courts often look to chronological proximity and evidence of ongoing antagonism. *Abramson v. William Patterson Coll.*, 260 F.3d 265, 288 (3d Cir. 2001). Temporal proximity raises an inference that their protected activity was the likely reason for the adverse action. *Campbell v. Abercrombie & Fitch, Co.*, No. 03–3159, 2005 WL 1387645, at *7

(D.N.J. June 9, 2005) (citing *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 177 (3d Cir. 1997)); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). The Supreme Court has emphasized that "cases which accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be very close." *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

However, "[i]t is important to emphasize that it is causation, not temporal proximity itself, that is an element of plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Johnson-Winters v. Redner's Mkt. Inc.*, 610 F. App'x 149, 154 (3d Cir. 2015). In addition, "[w]hen there may be valid reasons why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Id.*

In satisfying causation, a plaintiff need "only prove that retaliation played a role in the decision and that it made an actual difference in defendant's decision." *Puglia v. Elk Pipeline, Inc.*, 141 A.3d 1187, 1201 (N.J. 2016). However, "if the employer would have made the same decision in the absence of the plaintiff's whistleblowing activity, then the employer wins." *Id.*; s*ee also Donofry*, 795 A.2d at 273 ("Plaintiff's ultimate burden of proof is to prove by a preponderance of the evidence that his protected, whistleblowing activity was a determinative or substantial, motivating factor in defendant's decision to terminate his employment—that it made a difference. Plaintiff need not prove that his whistleblowing activity was the only factor in the decision to fire him.").

Pochopin seeks relief under three sections of CEPA. He argues:

> [Pochopin] disclosed activities, policies, and practices of his employer to his supervisors, that [Pochopin] reasonably believed

10

> violated laws, rules, and regulations governing workplace safety. N.J.S.A. 34:19-3(a)(1). [Pochopin] objected to and refused to participate in activities, policies, and practices which [Pochopin] reasonable believed, violated laws, rules and regulations governing workplace safety. N.J.S.A. 34:19-3(c)(1). Finally, [Pochopin] objected to and refused to participate in activities, polices, and practices that incompatible with a the [sic] clear mandate of public policy concerning safety. N.J.S.A. 34:19-3(c)(3).

(ECF No. 27 at 3.) For purposes of this Motion, JCI concedes Pochopin has satisfied the first three elements of a CEPA claim. (ECF No. 23-1 at 7.) Therefore, the only element being challenged is the fourth element, requiring that Pochopin establish "a causal connection exists between the whistle-blowing activity and the adverse employment action." *Klein v. Univ. of Med. & Dentistry of N.J.*, 871 A.2d 681, 687 (N.J. Super. Ct. App. Div. 2005).

The Court finds Pochopin has not provided sufficient evidence to establish causation between his whistle-blowing and his layoff. The record establishes Pochopin was terminated in conjunction with a nationwide RIF, where over 800 employees were laid off nationwide. (ECF No. 23-2 ¶ 14.) It further establishes he was chosen for termination due to his low ranking in comparison to the other three electricians. In determining which electrician was going to be laid off, as well as other positions in the Project Mozart RIF, JCI ranked the electricians under four categories, Best Performance, Teamwork and Leadership, and Possession of Unique or Special Skills, with "1" being the best rating and "4" the worst. (*Id.* ¶ 22 and ECF No. 23-10 at 7.) Pochopin was ranked last. (ECF No. 23-10 at 7.) In addition to the ranking system, Babikian reviewed each electricians "craft utilization" score, which measures the percentage of total mechanic time that is attributable to productive work orders. (ECF No. 23-10 at 13.) Again, Pochopin had the lowest craft utilization score, demonstrating he was "the least productive of the 4 electricians." (ECF No. 23-10 at 13.) Because Pochopin was a union member, his layoff was also reviewed by the Labor Relations Director to assure the CBA was followed and layoff was appropriate. (Decl. of George

Mullane (ECF No. 23-11) ¶ 3.) After reviewing the ranking analysis and speaking with Pochopin's supervisors, the Labor Relations Director concurred with the decision to layoff Pochopin. (*Id.* ¶ 7.)

Pochopin has failed to provide any evidence demonstrating his safety concerns were at all related to his termination. He fails to present any evidence tying his raising of safety concerns to management's ranking of his performance and skills in the RIF. There is no evidence any supervisor or manager considered Pochopin's safety concerns or said anything negative to Pochopin for raising such concerns. Moreover, there is no evidence the nationwide RIF was created only as way to terminate Pochopin. Pochopin has not provided any material facts to discredit JCI's decision to downsize and select Pochopin for RIF. Indeed, Pochopin admits he could not recall any statement by any manager or supervisor that would support his belief that he was laid off due to his safety concerns. (ECF No. 30-2 at 200:6-203:14.) Instead, he contends many managers commemorated him for raising such concerns, and that they were surprised he was terminated. (*Id.*)

Pochopin has provided no evidence to contradict the reasons given for his termination over the other three electricians, other than his personal belief that he was a better performer. However, he does not point to any deposition testimony or other evidence establishing such. Instead, he admits Andre had "the best knowledge of all the electricians of the high voltage grid for the site." (ECF No. 23-5 at 183:2-7.) As to Clark, he also admits he had the "most knowledge about the outside sites." (*Id.* at 185:1-4.) Pochopin, however, contends McCartney did not have any unique skills. (*Id.* at 185:15-186:19.) Despite his contention, McCartney was ranked the highest in three of the four categories and ranked as the best of the four electricians. (ECF No. 23-10 at 7.)

Moreover, the Court finds no evidence other than Pochopin's bald assertions that he was "coincidentally" the only employee at the Raritan facility laid off due to the RIF. (ECF No. 27 at 5.) In fact, in his Counter Statement of Facts he admits he "was one of only three employees laid off at the Raritan facility" at that time, but states the other two employees were for performance reasons. (ECF No. 27-1 ¶ 14.) In addition, he admits others were reshuffled to other facilities as a result of the RIF, but not laid off. (*Id.*) However, Pochopin too was provided an opportunity to work at another facility but declined. (ECF No. 23-2 ¶ 45 and ECF No. 27-1 ¶ 45.)

Additionally, Pochopin was never a supervisor or manager of JCI and fails to provide any evidence other than his mere speculation as to his belief that he was the only employee laid off at the Raritan facility or only employee not reshuffled to a New Jersey facility during the RIF. *Sellers v. Schonfeld*, 637 A.2d 529, 531 (N.J. Super. Ct. App. Div. 1993) ("One who has no knowledge of a fact except for what he has read or for what another has told him cannot provide evidence to support a favorable disposition of a summary judgment. The absence of competent, admissible evidence precluded resolution of the summary judgments.")

Lastly, Pochopin's assertion that Babikian terminated him because he had "animus" towards him and "did not like" him because of a difference of opinion that occurred regarding whether a lifting tool was needed for a manhole cover on site, is equally unsupported by the record. In fact, the record demonstrates Babikian and Pochopin amicably resolved their differences. After Babikian inspected the manhole cover about which Pochopin was concerned, Pochopin sent an email stating: "Thank you Preston, Frank, and [Babikian] for taking a few minutes to witness the task at hand. Frank will check some things out and I have some ideas moving forward. Thanks again all for a safety time out discussion." (ECF No. 30-2, Ex. B at 3.) After Babikian authorized the purchase of a magnetic dolly, Pochopin emailed him and other management stating: "Thanks

13

again for approving the order of this tool for a much safer and could be a shared best practice JHA for JCI moving forward. Thanks again." (*Id.* at 1.) Moreover, there is no evidence that Babikian was aware of any other of Pochopin's safety concerns. Indeed, Pochopin testified he was unaware if Babikian knew about any of his other safety concerns. (ECF No. 30-2, Ex. A at 391:4-6.)

Nevertheless, even assuming Pochopin did meet his *prima facie* burden under CEPA, he has not proffered any evidence demonstrating JCI's proffered explanation for his termination—Pochopin was laid off due to a company-wide RIF, and having the lowest ranking out of all electricians at the Raritan facility—is unworthy of credence. Indeed, other than Pochopin's unsupported and conclusory allegation that JCI's stated reason for Pochopin's termination was "pretextual," he has not provided an explanation for how or why JCI's stated reason was pretextual nor has he pointed to any "inconsistencies or anomalies that could support an inference that the employer did not act for its stated reasons." *Sempier*, 45 F.3d at 731.

The record is replete with evidence that Pochopin was terminated due to a RIF and because he was the lowest ranking electrician. To the extent Pochopin argues his termination was a pretext because he had skills superior to the three electricians who were ranked higher than him, that argument has no merit. *See Swider v. Ha-Lo Indus., Inc.*, 134 F. Supp. 2d 607, 628 (D.N.J. 2001) (finding that "a plaintiff's disagreement with a defendant's evaluation of his performance, or the plaintiff's own perception of his performance, does not demonstrate pretext under the McDonnell Douglas framework"); *Cosgrove v. Cranford Bd. of Educ.*, 813 A.2d 591, 596 (N.J. Super. Ct. App. Div. 2003) (stating the plaintiff's "disagreement with evaluations of his performance does not demonstrate a pretext for discharging him, nor establish a prima facie case for retaliation or wrongful discharge [under the CEPA]"), *abrogated in part on other grounds*, *Dzwonar*, 828 A.2d at 893.

Lastly, "a firm's business judgment of highly subjective criteria, exercised in good faith, will not be second guessed in the absence of impermissible motives." *Jason v. Showboat Hotel & Casino*, 747 A.2d 802, 809 (N.J. Super. Ct. App. Div. 2000.) Pochopin has failed to establish JCI had "impermissible motives." Accordingly, JCI's Motion for Summary Judgment on Pochopin's CEPA claim is **GRANTED**.

### B. Breach of CBA Claim

In Count Two of the Complaint, Pochopin alleges a common law breach of contract claim, that JCI breached paragraph 4.4 of the CBA. (ECF No. 1-1 ¶¶ 29-32.) JCI contends this argument fails because: (1) it is preempted by § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 185(a); (2) it is time barred; (3) Pochopin did not exhaust the grievance procedure provided in the CBA; and (4) Pochopin cannot demonstrate the union breached its duty of fair representation. (ECF No. 23-1 at 11-12.) Pochopin does not oppose this argument in his opposition. Nevertheless, "[a] movant is not automatically entitled to summary judgment simply because the non-movant fails to oppose the motion." *Finkel v. U.S. Dep't of Labor*, No. 05-5525, 2007 WL 1963163, at *3 (D.N.J. June 29, 2007). Instead, the Court may only grant the unopposed motion "if appropriate." *Id.* (citations omitted). "An unopposed motion is appropriately granted when the movant is entitled to judgment as a matter of law." *Id.* Therefore, the Court will address the merits of this claim.

"It is well-settled that § 301 of the LMRA is subject to the complete preemption doctrine." *Norton v. Stop & Shop Store # 830*, No. 16-9385, 2017 WL 3610492, at *3 (D.N.J. Aug. 22, 2017); *see Johnson v. NBC Universal, Inc.*, 409 F. App'x 529, 531 (3d Cir. 2010). Section 301 of the LMRA, 29 U.S.C. § 185(a), states:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting

> commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

In its application, § 301 "provides for federal jurisdiction over disputes regarding collective bargaining agreements, and mandates the application of uniform federal law to resolve such disputes." *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 228 (3d Cir. 1995). In other words, "[w]hen a suit stating a claim under section 301 is brought, state contract law is displaced, and the collective agreement is interpreted under this federal common law." *Berda v. CBS Inc.*, 881 F.2d 20, 22 (3d Cir. 1989). The Supreme Court has construed the preemptive force of § 301 as being so powerful that it "not only pre-empt[s] state law but also authorize[s] removal of actions that [seek] relief only under state law." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6-7 (2003). "[I]ndeed any state-law cause of action for violation of collective-bargaining agreements is entirely displaced by federal law under § 301." *United Steelworkers of Am., AFL-CIO-CLC v. Rawson*, 495 U.S. 362, 368 (1990).

Because Pochopin is seeking relief under state law for a violation of a labor contract, relief which must be evaluated in accordance with the provision of the CBA, Pochopin's breach of contract claims is preempted by LMRA § 301. *See, e.g., Seritti v. Miners Mem'l Med. Ctr.*, No. 3-1748, 2001 WL 830329, at *3-4 (M.D. Pa. July 24, 2001) ("A state law claim for breaching the terms of a CBA is entirely preempted by § 301 of the LMRA."). When a court determines that a state law claim is preempted by LMRA § 301, it can either treat the claim as a LMRA § 301 claim or dismiss such claim as preempted. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Since Pochopin did not oppose the dismissal of his breach of contract claim, the Court chooses to dismiss it as preempted. *Bergen Reg'l Med. Ctr., L.P. v. Health Professionals*, No. 05-2596, 2005

WL 3216549, at *5 (D.N.J. Nov. 29, 2005) (dismissing state law claim due to preemption by LMRA § 301).

Even if this Court were to treat Pochopin's breach of contract claim as a § 301 claim, Pochopin has not completed the appropriate administrative grievance procedure prior to filing the instant matter. *See, e.g., Allis–Chalmers*, 471 U.S. at 220–21; *Adkins v. U.S. West Commc'ns, Inc.*, 181 F. Supp. 2d 1189, 1199–1200 (D. Colo. 2001); *Myers v. AK Steel Corp.*, 156 F. App'x 528, 530 (3d Cir. 2005) ("An employee alleging breach of the collective bargaining agreement . . . must exhaust contractually-mandated grievance and arbitration procedures before he or she is permitted to file suit under § 301.") Pochopin admits he filed a grievance in January 2015, through the Union, but withdrew it in March 2015. (ECF No. 23-11 ¶ 8.) Therefore, JCI's Motion for Summary Judgment as to Count Two is **GRATNED**.

IV. **CONCLUSION**

For the reasons set forth above JCI's Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

**Date:** March 29, 2018              */s/ Brian R. Martinotti*
                                      **HON. BRIAN R. MARTINOTTI**
                                      **UNITED STATES DISTRICT JUDGE**